Fuchsberg, J.
The issues on this appeal are whether the Special Prosecutor has established a sufficient factual basis for the issuance of an office subpoena duces tecum and, if he has, whether it entitles him tq retain possession of the books and records so subpoenaed for his private examination and audit.
The Special Prosecutor served an office subpoena duces tecum upon a partner in petitioner Windsor Park Nursing Home, which thereupon moved to quash, contending, in the main, that the prosecutor has failed to establish relevancy of the items he seeks and that, in any event, he is not entitled to "seize and examine” them.
On the question of relevancy the prosecutor relied, among other things, on the results of a 1969 audit by the State Department of Health which revealed that "$21,077 in expenses claimed by petitioner to have been incurred in patient care had been wrongfully claimed.” Petitioner asserts that the disallowances were caused by the imposition of cost ceilings upon legitimate patient-related expenses. But the Special Prosecutor counters that some of the disallowed items included payments for personal items of the directors and partners.
Criminal Term denied the motion, except that, in a resettled order, it provided "that a representative of Windsor Park or its counsel may be present during the audit, inspection, photocopying, and examination of its books and records produced * * * pursuant to the subpoena duces tecum. The documents may not be retained beyond a reasonable time and petitioner’s representative is entitled to access to them during *246 normal weekday business hours.” On cross appeals, the Appellate Division unanimously modified the resettled order by striking the provision permitting petitioner or its representative to be present during the "audit”.
Preliminarily, it appears clear that the relevancy question need not long detain us. Nonjudicial office subpoenas must bear only a "reasonable relation to the subject-matter under investigation and to the public purpose to be achieved” (Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231; Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 257). Probable cause that there has been wrongdoing is not essential. The records sought here obviously concern a nursing home. Given the Department of Health audit, it cannot be said that the possible fiscal and recordkeeping irregularities to which the Special Prosecutor points do not meet the necessary standard (cf. Matter of Lewis v Hynes, 82 Misc 2d 256, affd 51 AD2d 550). As we observed in rejecting an analogous challenge in Matter of Alexander v New York State Comm, to Investigate Harness Racing (306 NY 421, 426), the prosecutor "will, of course, be restricted to such material as is relevant to the subject of the inquiry, but [he] is not obliged to take petitioners’ word for what is or is not relevant.”
Turning now to the core issue of whether the prosecutor may take possession of the records, we note that his subpoena was issued pursuant to subdivision 8 of section 63 of the Executive Law, which authorizes the Special Prosecutor, in his nursing home inquiry (see Matter of Sigety v Hynes, 38 NY2d 260), "to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require the production of any books or papers which he deems relevant or material to the inquiry” (emphasis supplied).
Authorization to conduct an inquiry and issue subpoenas is not authorization to take possession of books and records for examination and audit (see Matter of Heisler v Hynes, 42 NY2d 250 [decided herewith]). Even when the Legislature has authorized a government agency to examine or audit records, the enabling statute has expressly spelled out that power (e.g., Agriculture and Markets Law, § 256-a [commissioner granted "power to inspect and copy and audit”]; Alcoholic Beverage Control Law, § 43, subd 4 [local board given power "to examine or cause to be examined the books and records”]; Banking Law, § 471, subd 2, par [d] [supervisory committee, of credit *247 union given power to "audit” books and records]; Executive Law, § 758, subd 9, par [c] [Board of Social Welfare given power to "examine books and records”); Public Health Law, § 2803, subd 1, par [b] [Commissioner of Health given power to conduct examinations and audit financial records]; Pari-Mutuel Revenue Law, L 1940, ch 254, § 36, subd 2, as amd by L 1959, ch 881, § 3 [State Harness Racing Commission empowered "to visit, investigate, and place expert accountants * * * in the offices [and] tracks”). And/ even in civil litigation, the right of a party to "inspect, copy, test or photograph” documents is expressly provided for in CPLR 3120.
Many of the agencies given the power to conduct audits also have subpoena power (e.g., Alcoholic Beverage Control Law, § 43, subd 4; Executive Law, § 752). It is logical to assume, therefore, that the Legislature intended even these statutes for separate purposes. Similarly, attorneys for parties in civil litigation are granted the power to issue a subpoena duces tecum (CPLR 2302); there too, were the power to inspect and copy books and records synonymous, CPLR 3120 would be superfluous.
In sum, the statute under which the Special Prosecutor issued the subpoena does not authorize him to retain custody of the documents for the purpose of audit and examination. It would take an enlargement of his power for him to do so; that would require legislative, not judicial, sanction.
Accordingly, while petitioner must produce the books and records, we conclude it may not be required to relinquish them and the order of the Appellate Division must be modified, accordingly.