OPINION OF THE COURT
Duncan S. McNab, J.
Petitioner herein, the Special State Prosecutor for Nursing Homes, has moved pursuant to CPLR 2308 (subd [b]) for an order mandating and directing compliance with a certain subpoena duces tecum issued upon the respondent home for adults on October 7, 1977, which subpoena calls for production of a wide variety of respondent’s books and records; and that upon production, the named respondents surrender possession of said records to the Office of the Special Prosecutor for purposes of inspection, examination or audit. While respondents have not chosen to cross-move to quash the instant subpoena, they are by way of an affirmation in opposition, opposing the motion of the Special Prosecutor on grounds that the turnover and surrender of records to the Special Prosecutor for examination and audit as permitted via recent amendments to CPLR 2305 and subdivision 8 of section 63 of the Executive Law, effective July 19, 1977 (see L 1977, ch 451) would be unconstitutional as violative of respondent’s Fourth and Fifth Amendment rights.
At the threshold, the court would note that the Court of Appeals, in the seminal case of Matter of Friedman v Hi-Li Manor Home for Adults (42 NY2d 408), decided July 7, 1977, has approved the procedural posture adopted by respondents herein of awaiting the institution of proceedings to compel compliance and then for the first time raising objection. Thus, there would seem to be no infirmity in, nor does the Special Prosecutor raise objection to, the present procedural posture of the instant case; the court would thereby go directly to the merits of defendant’s substantive claims.
*498 THE FIFTH AMENDMENT ISSUE
Initially, it is undisputed that the subpoena in question herein was issued pursuant to the authority granted the Deputy Attorney-General (i.e., the Office of the Special Prosecutor) by Executive Order No. 36, dated August 2, 1976 (9 NYCRR 3.36) and subdivision 8 of section 63 of the Executive Law. In Matter of Friedman v Hi-Li Manor Home for Adults (supra, pp 411-412), the Court of Appeals held that "the Deputy Attorney-General had authority by the issuance of an office subpoena duces tecum under subdivision 8 of section 63 of the Executive Law to compel the production of books and records of private proprietary homes for adults.” In so holding, the Court of Appeals relied heavily on its previous holding in Matter of Sigety v Hynes (38 NY2d 260, cert den 425 US 974) wherein the subpoena power of the Special Prosecutor under subdivision 8 of section 63 of the Executive Law was upheld in an ongoing investigation of the nursing home industry. Noting the "close similarity” of adult homes to nursing homes, including the infusion of public moneys into both types of institutions and the fact that both are subject to State regulation and supervision, the Friedman court affirmed lower court orders denying motions to quash the office subpoenas served therein. Of more immediate import herein, however, the Friedman court went beyond the issue of authority for the issuance of the subpoena to specifically reject the further contention that enforcement of the subpoenas would violate constitutional protections against compulsory self incrimination. Judge Jones, speaking for the majority in Friedman (Cooke, J., concurring in a separate opinion in which Jasen and Gabrielli, JJ., concurred), clearly stated that (supra, p 416) "the proposition that a PPHA is such a 'private enclave’ [wherein the privilege could be raised, see Bellis v United States, 417 US 85] is negated beyond peradventure by the statutory command to the Board of Social Welfare to 'visit and inspect, from time to time, and maintain a general supervision’ of such homes (Executive Law, § 750, subd 1 par a); the grant of power to representatives of the board of 'full access to the * * * books and papers relating to such institution’ (Executive Law, § 750, subd 3) * * * and the required compliance in operation of such a home with the rules of the board (Executive Law, § 758, subd 3, par [e]; cf. Davis v United States, 328 US 582).” Contrary to respondent’s assertion, then, it would seem crystal clear that the Friedman court placed *499 adult homes squarely under the "required records” exception to the Fifth Amendment initially enunciated with respect to nursing homes in Sigety (supra; and see Shapiro v United States, 335 US 1); accordingly, respondent herein has no Fifth Amendment objection to raise upon production of the books and records being sought. (Cf. Andresen v Maryland, 427 US 463, 473-474, wherein the United States Supreme Court noted that the "Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession [but not from a seizure of the same materials by law enforcement officers pursuant to a search warrant] because the very act of production may constitute a compulsory authentication of incriminating information” in the context of a search of an attorney’s law office pursuant to State warrant, as opposed to the subpoena served in the instant case upon a facility subject to extensive State regulation [emphasis added].)
The court turns then to the separate issue of whether surrender of respondent’s books and records pursuant to the above-noted recently enacted amendments to subdivision 8 of section 63 of the Executive Law and CPLR 2305 would be unconstitutional as tantamount to an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments.
By way of preface, it is significant to note that both of these amendments were enacted less than two weeks after the Court of Appeals ruled in Matter of Windsor Park Nursing Home v Hynes (42 NY2d 243) and Matter of Heisler v Hynes (42 NY2d 250), both decided July 7, 1977, that while the Special Prosecutor could require production of a party’s records either at his office or before the Grand Jury, such a right to production did not carry with it an accompanying right to retain possession of the records for independent examination via the issuance of an office subpoena duces tecum or Grand Jury subpoena duces tecum, respectively (absent proper application for an order of impoundment).
As amended, effective July 19, 1977, CPLR 2305 reads as follows:
"Attendance required pursuant to subpoena; possession of books, records, documents or papers * * *
"(c) Inspection, examination and audit of records. Whenever by statute any department or agency of government, or officer thereof, is authorized to issue a subpoena requiring the pro *500 duction of books, records, documents or papers, the issuing party shall have the right to the possession of such material for a period of time, and on terms and conditions, as may reasonably be required for the inspection, examination or audit , of the material. The reasonableness of such possession, time, terms and conditions shall be determined with consideration for, among other things, (i) the good cause shown by the issuing party, (ii) the rights and needs of the person subpoenaed, and (iii) the feasibility and appropriateness of making copies of the material. The cost of reproduction and transportation incident thereto shall be borne by the person or party issuing the subpoena unless the court determines otherwise in the interest of justice.”
Also effective July 19, 1977, subdivision 8 of section 63 of the Executive Law, as amended, and in pertinent part, reads as follows: "The attorney general, his deputy, or other officer, designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require [the production of] that any books, records, documents or papers [which he deems] relevant or material to the inquiry be turned over to him for inspection, examination or audit, pursuant to the civil practice law and rules. If a person subpoenaed to attend upon such inquiry fails to obey the command of a subpoena without reasonable cause, or if a person in attendance upon such inquiry shall, without reasonable cause, refuse to be sworn or to be examined or to answer a question or to produce a book or paper, when ordered so to do by the officer conducting such inquiry, he shall be guilty of a misdemeanor.”[1]
Significantly, the Court of Appeals in Heisler (supra, p 254), left open the very question raised herein in commenting: "if our Legislature had intended * * * a subpoena duces tecum to compel a witness to surrender possession of books and records for audit and examination, if that be constitutionally valid, it is to be assumed that it would have done so expressly”. (Emphasis added.)
Proceeding from that background, and now confronted by such an express legislative enactment, it is well settled that " 'there is a strong presumption that a statute duly enacted by the Legislature is constitutional’ and 'that in order
*501 to declare a law unconstitutional, the invalidity of the law must be demonstrated [by the person attacking it] beyond a reasonable doubt.’ ” (People v Berck, 32 NY2d 567, 569, citing People v Pagnotta, 25 NY2d 333, 337, and Matter of Van Berkel v Power, 16 NY2d 37, 40, wherein the Court of Appeals further held that legislative enactments should be struck down "only as a last unavoidable result.”) Moreover, it has been held that a lower court, as distinguished from a court having appellate jurisdiction, should not declare a statute in contravention of the law of the State unless it is "unreasonable, arbitrary and the conclusion of unconstitutionality is inescapable.” (People v Esteves, 85 Misc 2d 217, 219; People v Barrera, NYLJ, Feb. 20, 1976, p 8, col 1.) This court feels that in the instant case respondent has failed to meet this burden.
First, respondent alludes in his opposing papers to the fact that the subpoena calls for production and surrender of "a multitude of documents covering some twenty four general headings.” The court would again refer to the Hi-Li Manor case (supra), wherein the Court of Appeals stated that the office subpoena duces tecum therein, in calling for the production of "voluminous books and records” may have reached, but did not exceed, the permissible limits of the reach of an office subpoena, and was not overbroad; similarly, in an as yet unreported decision from the Southern District of New York, Judge Robert Carter, in the case of Roseman v Hynes, dated November 9, 1977, rejected a constitutional challenge to a very similar subpoena duces tecum served on an adult home pursuant to subdivision 8 of section 63 of the Executive Law, holding that the subpoena itself was not constitutionally infirm on grounds of overbreadth or unreasonableness. Certainly then, the instant subpoena must be seen as withstanding any challenge on this ground.
More significant however, is respondent’s Fourth Amendment contention that the requested surrender of the books and records herein, "upon the mere signature of the Special Prosecutor”, would be tantamount to an unjustified search and seizure, not pursuant to search warrant and absent any showing of probable cause.
In the first instance, this court would not equate a search warrant with a subpoena duces tecum; it is well settled that there are distinctions between a seizure of evidence and the obtaining of evidence "pursuant to orders of court authorized by law and made after adequate opportunity to present
*502 objections”. (See Oklahoma Press Pub. Co. v Walling; 327 US 186, 195; Matter of Horowitz, 482 F2d 72, 75; and see Andresen v Maryland, 427 US 463, supra.) Yet, this court might well have agreed with respondent’s due process argument with regard to the "indispensable condition” of interposing a neutral and detached Magistrate between law enforcement agents and the individual citizen had subdivision 8 of section 63 of the Executive Law, as amended, merely stated that "the attorney general or his deputy * * * is empowered to subpoena witnesses * * * and require the production of any books and records * * * which he deems relevant or material * * * be turned over to him for inspection, examination, or audit.” (Emphasis added; and see Mancusi v De Forte, 392 US 364.) However, such is not the case. Subdivision 8 of section 63 of the Executive Law, as amended, specifically deletes the phrase "which he deems” relevant and only permits the turnover of books and records to the Deputy Attorney-General pursuant to the CPLR. Thus, subdivision 8 of section 63 of the Executive Law must be read in conjunction with CPLR 2305 (subd [c]), which, as amended, provides, in pertinent part: "[T]he issuing party shall have the right to the possession of such material for a period of time, and on terms and conditions, as may reasonably be required for the inspection, examination or audit of the material. The reasonableness of such possession, time, terms, and conditions shall be determined with consideration for, among other things, (i) the good cause shown by the issuing party, (ii) the rights and needs of the person subpoenaed, and (iii) the feasibility and appropriateness of making copies of the material.” (Emphasis added.)
Thus, the explicit language of CPLR 2305 (subd [c]) provides that the issuing party shall have the right to possession for a reasonable time upon a showing of good cause; in other words, this statute requires the court to make the determination whether the issuing party in fact has good cause to demand a surrender of the requested records. Such a requirement satisfies the fundamental due process issue raised by respondent; that is, it interposes the determination of a neutral and detached Magistrate between the Deputy Attorney-General and the objecting party. A similar statutory requirement, i.e., refusing to produce a book or paper without reasonable cause, has in the past saved a legislative enactment from constitutional attack. (See Matter of Barnes, 204 NY 108, wherein the contempt provisions of section 856 of the Code of Civil Proce *503 dure were found to satisfy due process of law and upheld as constitutionally valid; and compare People v Berck, 32 NY2d 567, 571, supra, wherein the loitering provision contained in subdivision 6 of section 240.35 of the Penal Law was found to be unconstitutionally vague and in violation of due process of law for failing to require a showing of probable cause to arrest, thereby placing "virtually unfettered discretion in the hands of the police.”)
Having thus determined that subdivision 8 of section 63 of the Executive Law and CPLR 2305, as amended, pass constitutional muster when read in conjunction, the question that remains is what is "good cause” in the context of a turnover pursuant to subpoena duces tecum, and has the Special Prosecutor established such good cause to the court’s satisfaction herein. Unlike a search warrant, a subpoena duces tecum need not rest on a showing of probable cause to sustain its issuance nor even a "strong and probative basis for investigation”; all that is required is that "the basis for its issuance be more than isolated or rare complaints by disgruntled” individuals; phrased differently, a mere general averment of wrongdoing would not suffice, nor would mere "shadowy complaints and surmise.” (Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 258.) This court has previously held in a case involving a health-related facility, that "to meet this relatively minimal standard [that the records sought bear a reasonable relationship to the subject matter unde.- investigation and the public purpose to be served] 'the agency asserting this subpoena power must show its authority, the relevancy of the items sought, and some [articulable, factual] basis for inquisitorial action. ’ ” (Fishkill Health Related Facility v Hynes, NYLJ, Oct. 6, 1977, p 12, col 1 [emphasis added], citing Myerson v Lentini Bros., supra, in turn citing Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916; and see, also, Matter of Windsor Park Nursing Home v Hynes, 42 NY2d 243, supra.)
Initially, since the authority of the Special Prosecutor to subpoena books and records has been extended to private proprietary homes for adults as well as those of nursing homes and health-related facilities under subdivision 8 of section 63 of the Executive Law (see Matter of Friedman v Hi-Li Manor Home, supra) and since the items being sought assuredly are relevant to the Special Prosecutor’s inquiry, this court can see no reason not to apply the "factual basis” test of *504 Fishkill to PPHA’s as well. And, unlike the case in Fishkill (supra), where this court granted a motion to quash a subpoena duces tecum upon the Special Prosecutor’s candid concession that he had no particular information of any wrongdoing at that facility, here the Special Prosecutor has represented to the court a wide range of specific instances of alleged wrongdoing, including the following:
That on May 29, 1977, a resident of the Mt. View Home sexually abused a three-year-old girl in the nearby Village of Haverstraw, New York, and that in the months preceding June 6, 1977, the Haverstraw Police Department had frequently been called to respondent’s facility concerning a variety of other complaints, including, but not limited to a reported larceny, a possible drug overdose, and an apparent D.O.A. on respondent’s premises, all of which are reflected in the official records of the Haverstraw Police Department, furnished to the court as Exhibit B; that on February 1, 1977, in defiance of the instructions of the then regulatory Board of Social Welfare,[2] Mr. Jacob Rosenbaum, a partner in the Mt. View Home, improperly transferred some 30 residents of an adult home which had been ordered closed in Brooklyn to his facility, all 30 being released mental patients, without making the medical and financial records of these transferees available to the Department of Social Services as required by law; that on November 18, 1977, Judge Edward O’Gorman, sitting in Supreme Court, Rockland County, in a case entitled Andres v Mountainview Home for Adults (92 Misc 2d 136), enjoined and restrained the named respondents from continuing to hold plaintiff Lang’s Social Security and SSI checks unless and until plaintiff were to authorize the respondents, in writing, to exercise control over her checks; additionally, per the affirmation of Special Assistant Attorney-General Allen Mincho dated December 1, 1977, it is averred that representatives of the North Rockland Outreach Center (a unit of the Department of Mental Hygiene) have alleged that portions of residents’ Social Security checks, reserved for the personal use of residents, are now being retained by Mt. View in violation of applicable State and Federal regulations.[3]
*505 Without any question, the sum total of this information more than provides the required factual basis necessary to establish the requisite "good cause” under CPLR 2305 and to support the issuance of the instant subpoena duces tecum upon respondent.
Accordingly, it is hereby ordered, pursuant to CPLR 2308 (subd [b]), that the Special Prosecutor’s motion be granted and that, by no later than 5:00 p.m., Tuesday, December 20, 1977, the named respondents are directed to comply with the subpoena issued on October 7, 1977, by producing and turning over to the Special Prosecutor for inspection, examination or audit those books and records requested, for such time as would be reasonably required for inspection, examination and audit; it is further ordered, however, that the Special Prosecutor’s request to impose $50 costs, pursuant to CPLR 2308 (subd [b]), is hereby denied.

. Language contained in bracketed sections deleted upon amendment of July 19, 1977.

. The Special Prosecutor has represented to the court that the job of regulating adult homes has since been entrusted to the Department of Social Services.

. The Special Prosecutor also avers that on January 12, 1976, a resident of respondent’s facility, then known as Hi-Tor Manor Home for Adults, died of starvation, which incident ultimately led a Rockland County Grand Jury to conclude, by *505 way of Grand Jury report, that the facility was guilty of neglect; however, since this incident occurred prior to the facility’s acquiring its present name, and since it appears that the composition of the partnership managing the respondent home has been altered, due in part to the death of a former partner, since this alleged incident, it will not be considered herein in determining the merits of the Special Prosecutor’s motion for compliance.