OPINION OF THE COURT
Jasen, J.
In these three cases involving Mountain View Home for Adults, Queens Nassau Nursing Home and Far Rockaway Nursing Home, all of which present substantially the same issues, direct appeals are taken on constitutional grounds from three separate orders of the Supreme Court.
The Mountain View Home appeal is taken from an order directing compliance with a subpoena duces tecum issued by respondent, the Special Prosecutor for Nursing Homes (Deputy Attorney-General), on October 7, 1977. The subpoena required the production of various books and records of the home at the office of the Special Prosecutor. The schedule attached to the subpoena, detailing the specific items sought, included 24 general categories of books and records encompassing essentially all appellant’s business records.
When it became apparent that appellant nursing home would not comply with the subpoena, the Special Prosecutor moved for an order to compel compliance pursuant to CPLR *388 2308 (subd [b]). In addition to seeking production of the documents, the Special Prosecutor also sought "possession * * * [of the subpoenaed materials] for the inspection, examination or audit” as authorized by subdivision 8 of section 63 of the Executive Law and CPLR 2305 (subd [c]). Appellants[1] opposed the motion alleging that subdivision 8 of section 63 of the Executive Law and CPLR 2305 (subd [c]) violate the Fourth Amendment proscription against unreasonable searches and seizures. The statutes were also challenged as being unconstitutionally vague, and it was further argued that compulsion to produce potentially incriminating evidence contravenes the constitutional right against self incrimination.
In support of the motion to compel compliance, the Special Prosecutor argued that several allegedly illicit activities conducted at the home justified both the investigation and the subpoena. The Special Prosecutor informed the court that a sexual abuse complaint had been lodged against a resident of the home, that a number of residents had been improperly transferred to the home, and that a civil action was pending against the home for improperly withholding funds.
After a hearing, Supreme Court directed that the subpoenaed books and records be delivered to the Special Prosecutor no later than 5 p.m. on December 20, 1977. Because of the pending appeal, a motion to stay enforcement of the subpoena has been granted, and the subpoenaed materials have been placed in the custody of the Clerk for the County of Rockland.
In the Queens Nassau Nursing Home case, direct appeal is taken on constitutional grounds from an order of Supreme Court, Queens County, denying appellant’s motion to quash a Grand Jury subpoena duces tecum issued on August 1, 1977. Appellant contends that the statute authorizing the Grand Jury and the Special Prosecutor to retain the subpoenaed materials is unconstitutionally vague, violative of the Fourth Amendment proscription against unreasonable searches and seizures, and contrary to the purpose of the Grand Jury as a body immune to governmental interference and control.
Review of the history of this case is necessary to understand fully its posture. On November 1, 1976, a Queens County Grand Jury subpoena duces tecum was served on appellant Herman Greenbaum, a partner of Queens Nassau Nursing *389 Home, commanding production of the books and records of the nursing home for 1973 to 1976. Greenbaum moved to quash the subpoena on the grounds that it violated his constitutional right against self incrimination, that the subpoena was over-broad and that it had been served improperly. On November 5, 1976, the motion was denied.
Subsequently indicted on one count of conspiracy in the fourth degree and 22 counts of willful violation of the health laws, Greenbaum was arraigned on November 16, 1976. The indictment charged that Greenbaum had engaged in a scheme to obtain kickbacks from a vendor of the nursing home.
On December 2, 1976, Greenbaum appeared before the Grand Jury, and produced only some of the subpoenaed materials. An oral motion seeking return of the records was denied. This motion was renewed in writing. In denying the renewed motion, Supreme Court permitted Greenbaum to be present during examination of the records if he so desired, but on reargument the order was modified to disallow Greenbaum’s presence during inspection.
Faced with Greenbaum’s persistent refusal to comply with the subpoena, the Special Prosecutor moved to have Greenbaum held in contempt. Supreme Court, Queens County, withheld decision pending our determination of Matter of Heisler v Hynes (42 NY2d 250) and Matter of Windsor Park Nursing Home v Hynes (42 NY2d 243). The holding in those cases, forbidding the Special Prosecutor from retaining custody of the documents sought by a Grand Jury or officer subpoena duces tecum, absent statutory authority, prompted the Special Prosecutor to withdraw the contempt motion.
Shortly after the Heisler and Windsor Park decisions, the Legislature enacted CPL 610.25, which authorized limited possession and retention by the Special Prosecutor of materials subpoenaed by the Grand Jury. The Grand Jury subpoena duces tecum now challenged was issued on August 1, 1977, pursuant to the newly enacted CPL 610.25. It required production of 17 categories of books and records of the home from 1973 to 1976. A motion to quash the subpoena on the ground that CPL 610.25 is unconstitutional was denied. Pending resolution of this appeal, the subpoenaed records have been impounded by the Supreme Court, Queens County.
In the Far Rockaway Nursing Home case, Laszlo Szanto, a partner in the nursing home, was served with a Grand Jury subpoena duces tecum on August 1, 1977, commanding pro *390 duction of books and records of the home for 1970 to 1976. A motion to quash the subpoena on grounds of unconstitutionality was denied by Supreme Court, Queens County.
This history of this case is similar to that of the Queens Nassau Nursing Home case. In October of 1976, a Grand Jury subpoena duces tecum was issued to Szanto commanding production of the home’s books and records. Szanto moved to quash the subpoena, asserting his constitutional right against self incrimination. He also alleged that the subpoena was overbroad, and was served improperly. On November 5, 1976, the motion was denied.
On November 12, 1976, Szanto was indicted on one count of conspiracy in the fourth degree and 14 counts of willful violation of the health laws. As was the case with Greenbaum, Szanto was charged with involvement in a kickback scheme.
Because Szanto refused to comply with the subpoena, the Special Prosecutor moved to hold him in contempt. Supreme Court, Queens County, ordered that Szanto would be held in contempt if he failed to comply with the subpoena by June 7, 1977. The Heisler and Windsor Park decisions, however, prompted the withdrawal of the contempt motion.
Passage of CPL 610.25 led to the issuance of the presently challenged Grand Jury subpoena duces tecum. Denying appellants’ motion to quash, Supreme Court, Queens County, held the statute constitutional, and ordered that the subpoenaed documents be placed in the custody of the Supreme Court, Queens County. However, most of the documents have not been delivered to the court due to an alleged burglary at Far Rockaway Nursing Home which allegedly occurred on June 6, 1977.
Before proceeding to the various constitutional arguments raised against the three challenged statutes, a general overview of these provisions will be instructive. CPL 610.25[2] pro *391 vides that where a subpoena duces tecum is issued upon reasonable notice to the subpoenaed party, "Such evidence may be retained by the court, grand jury or district attorney on behalf of the grand jury.” The reasonableness, duration and conditions of such possession shall be determined by the court with consideration for, among other things, the "good cause” shown by the issuing party, the rights and legitimate needs of the subpoenaed person, and the feasibility and appropriateness of copying the subpoenaed material.
Subdivision 8 of section 63 of the Executive Law[3] empowers the Attorney-General to issue office subpoenas duces tecum and to possess and retain subpoenaed materials in accordance with the provisions of the CPLR. In language nearly identical to that of CPL 610.25, CPLR 2305 (subd [c])[4] provides the bounds of reasonable possession and retention of subpoenaed documents.
On the present appeal, in Queens Nassau and Far Rockaway, CPL 610.25 is challenged as being unconstitutionally vague in violation of the constitutional right to due process of law in that the statute fails to define what is meant by the *392 phrase, "good cause shown by the party issuing the subpoena”, and that the statute fails to specify whether "good cause” must be shown prior to the issuance of the subpoena or only upon challenge to the possession of the subpoenaed documents. The same vagueness argument is raised in Mountain View, attacking the constitutionality of CPLR 2305 (subd [c]) and subdivision 8 of section 63 of the Executive Law. Because CPL 610.25 and CPLR 2305 (subd [c]) are cast in nearly identical language, challenges, that they are unconstitutionally vague will be considered together.
We conclude that the statutes are not unconstitutionally vague in either respect. A reading of the statutes quickly dispels the slightest trace of ambiguity. We believe the phrase "good cause shown by the issuer”, as it appears in the statutes, means precisely what it says — good reason to be shown by the issuer why the possession required by the subpoena should be continued for a reasonable time. It does not refer to something which the issuer must show the court before a subpoena is issued, but, rather, it refers to one factor "among other things” to be considered by the court in determining a challenge by the subpoenaed party after the subpoena is issued as to the extent of possession to which the issuer of the subpoena is entitled.[5] Good cause means, then, a sufficient justification to possess the subpoenaed documents for a reasonable period of time in conjunction with the pending investiga *393 tion. Indeed it would be anomalous to require an in-court showing of good cause for possession prior to issuance since the very validity of the subpoena need not be demonstrated in court before the subpoena issues.
And if more need be said, reference to the legislative history conclusively establishes the intended statutory meaning. The intent behind the new law was explained as follows: "[F]or the first time in New York law the witness whose records are subpoenaed will have some specific statutory safeguards to assert, to limit the prosecutor’s power and to protect the witness’ rights in terms of possession and in terms of the times and conditions of that possession”.
"[T]here could be recourse in the courts either on a motion to compel or a motion to quash or modify * * * No court order is required though in advance”. (Emphasis added.) (Statement made before State Assembly, Richard Gottfried, Chairman of the Assembly Codes Committee.)
 We would also observe that the statutes do not affect the law as it existed prior to their enactment with respect to the obligation of a person served with a nonjudicial subpoena duces tecum. A person subject to a nonjudicial subpoena duces tecum may challenge it in court if the subpoena requires the production of irrelevant or immaterial documents (Carlisle v Bennett, 268 NY 212), or is used as an instrument of harassment (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, cert den 395 US 959). Likewise, where the subpoenaed person fails to comply with the subpoena, the issuer may move to compel compliance. On such a motion, the issuer must show that the items sought to be subpoenaed "have some relevancy and materiality to the matter under investigation”. (Carlisle v Bennett, supra, at p 218; Matter of La Belle Creole Int., S. A. v Attorney-General of State of N. Y., 10 NY2d 192, 196.) While a showing of probable cause or probative evidence to suspect illicit activity need not be shown to support a subpoena, evidence so scant that it does not legitimately raise an issue of impropriety is not enough. (Myerson v Lentini Moving & Stor. Co., 33 NY2d 250, 256.) Bifurcation of the power, on the one hand, of the public official to issue subpoenas duces tecum and, on the other hand, of the courts to enforce them, is an inherent protection against abuse of subpoena power. The statutes challenged as vague in these cases do not alter these well-settled principles in any way, for they speak only to the *394 right and duration of possession of subpoenaed documents, and not to the validity of the subpoenas.
It is further argued by appellants that the challenged statutes are violative of the Fourth Amendment proscription against unreasonable searches and seizures in authorizing the seizure and retention of subpoenaed materials without a showing of probable cause. We find this argument unpersuasive. Unlike searches and seizures, where a preliminary showing of probable cause is required before a warrant may issue, a Grand Jury is not saddled with such a requirement in issuing a subpoena duces tecum. To do so would assuredly impede its broad investigative powers to determine whether a crime has been committed and who has committed it. All that is required under the State and Federal Constitutions is that the subpoenaed materials be relevant to the investigation being conducted and that the subpoena not be overbroad or unreasonably burdensome. (Myerson v Lentini Moving & Stor. Co., 33 NY2d 250, supra; Matter of Horowitz, 482 F2d 72, 75-79, cert den 414 US 867.)
This constitutional guarantee seeks to balance the interests of society in discovering evidence of criminal activity with the right of the individual to be free from unjustifiable governmental intrusions. To be sure, an intrusion imposed on a person subject to a search and seizure is substantial. A search is conducted without advance notice and the scene of the search may be an individual’s home. Where resistance is encountered, the search may be effected by the threat or use of force. These considerations demand that a warrant issue only if supported by probable cause.
But these considerations do not apply with equal force to the Grand Jury subpoena duces tecum. (Hale v Henkel, 201 US 43, 76.) It is served in the same manner as any other legal process, and may be challenged, before compliance, in a motion to quash. (Matter of Manning v Valente, 272 App Div 358, affd 297 NY 681; United States v Doe [Schwartz], 457 F2d 895, 898, cert den 410 US 941.) If the motion to quash is denied and compliance ordered, no search is conducted, nor is there a threat or actual use of force. (Matter of B. T. Prods. v Barr, 44 NY2d 226.) Rather, the materials sought are furnished by the subpoenaed person himself at a time and place prescribed by the court. It should also be noted that a search warrant, unlike the subpoena, is not a preliminary investigatory tool, but is rather a device for obtaining evidence in *395 tended to be used against a defendant where probative support of his guilt is already known to the authorities. Clearly, the concerns which require that constitutional protections attach when a warrant issues do not apply equally when an investigatory subpoena duces tecum is served. Hence, "a subpoena to appear before a grand jury is not a 'seizure’ in the [constitutional] sense, even though that summons may be inconvenient or burdensome.” (United States v Dionisio, 410 US 1, 9.)
It is also noteworthy that the challenged subpoenas seek the production of business records and not personal papers. The applicability of the State and Federal Constitutions which protect personal papers from unreasonable searches and seizures has been questioned where a subpoena seeks those types of business records concerning which there is no serious expectation of privacy. (E.g., United States v Miller, 425 US 435, 445.) This is particularly true of records of a business subject to governmental control or license.
Turning to the challenged statute, CPL 610.25, which goes beyond the mere authorization of Grand Jury subpoenas by providing for the limited possession and retention of the subpoenaed records by the issuer, consideration must be given to whether the statute provides adequate safeguards to insure that the retention of subpoenaed items serves a legitimate public purpose and is reasonable in its scope and duration. (Robert Hawthorne, Inc. v Director of Internal Revenue, 406 F Supp 1098, 1106.) That the challenged statute serves a legitimate public purpose in facilitating the Grand Jury to conduct investigations is clear. But to allow the Grand Jury to possess subpoenaed records indefinitely or to possess documents not needed for investigative purposes might well signal a violation of constitutional standards. The challenged statute safeguards against such abuses providing that "[t]he reasonableness of such possession, time, terms, and conditions shall be determined with consideration for, among other things, (a) the good cause shown by the party issuing the subpoena or in whose behalf the subpoena is issued, (b) the rights and legitimate needs of the person subpoenaed and (c) the feasibility and appropriateness of making copies of the evidence.” These guidelines set the bounds of reasonableness regarding the conditions and duration of the retention of subpoenaed materials. The Grand Jury is not given unchecked power to hold subpoenaed records indefinitely. On a motion to limit the *396 possession of subpoenaed materials, the reasonablenss of the terms and duration of possession will be determined by the court. Hence, we believe such statutory safeguards comply with constitutional requirements. They help insure the smooth and uninterrupted functioning of the Grand Jury, while limiting the intrusion borne by those who are the subject of investigation.
Moreover, appellants’ contention that CPL 610.25 allows the District Attorney to pervert the function of the Grand Jury is also without merit. It is true, as appellants urge, that one of the purposes of the Grand Jury is to provide a buffer between the prosecutor and the criminal suspect. Thus, the issuance of indictments by the Grand Jury must be made independently. The Grand Jury, however, is also an investigatory body with broad inquisitorial powers, and the District Attorney is its legal advisor. (CPL 190.25, subd 6.) To discharge its responsibility of criminal investigation most effectively, the Grand Jury must act in close co-operation with the District Attorney. So long as the subpoenaed materials relate to a legitimate Grand Jury investigation, it would defy common sense to deprive the District Attorney access to them.
By like reasoning, subdivision 8 of section 63 of the Executive Law and CPLR 2305 (subd [c]), which provide for the retention of documents acquired by an office subpoena issued by the Attorney-General, must also be held constitutional. As is true of the Grand Jury subpoena duces tecum, the office subpoena duces tecum imposes only a minor infringement on one’s expectation of privacy. Thus, we conclude that the same relatively relaxed constitutional standards as were applied to CPL 610.25 be applied in testing the validity of subdivision 8 of section 63 of the Executive Law and CPLR 2305 (subd [c]). (Oklahoma Press Pub. Co. v Walling, 327 US 186, 195.) Our inquiry is, therefore, limited to whether these statutes promote the public interest and prescribe sufficient safeguards that the terms of retention will not unduly burden the subpoenaed party.
That the Attorney-General serves a vital public purpose is beyond doubt; he is given broad investigatory responsibilities in matters of public safety and welfare. We have already concluded that investigation into the rampant corruption in nursing homes is a proper exercise of this authority. (Matter of Sigety v Hynes, 38 NY2d 260, cert den 425 US 974.) To facilitate his effectiveness in carrying out such investigations, *397 the Legislature has granted the Attorney-General the power to issue subpoenas, and to retain custody of the subpoenaed materials within the bounds of reasonableness.
While the duration and terms of retention must, of course, comport with constitutional standards, we are satisfied that CPLR 2305 (subd [c]) meets these standards for it provides precisely the same detailed guidelines as does CPL 610.25 to assure that the retention of the subpoenaed documents will be supported by good cause and will be limited to a reasonable period of time. In addition, the statute provides that the needs of the subpoenaed party be considered to assure that the possession of the subpoenaed records by the Attorney-General will not prove unduly onerous to the subpoenaed party. The Constitution demands no more.
Accordingly, the orders of Supreme Court, Queens County, and Supreme Court, Rockland County, should be affirmed, with costs.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
In each case: Order affirmed, with costs.

. Laurence Moskowitz, Manager of Mountain View Nursing Home, was also served with a subpoena and is a party in this proceeding.

. CPL 610.25, effective July 19,1977, provides as follows:
"Securing attendance of witness by subpoena; possession of physical evidence.
"1. Where a subpoena duces tecum is issued on reasonable notice to the person subpoenaed, the court or grand jury shall have the right to possession of the subpoenaed evidence. Such evidence may be retained by the court, grand jury or district attorney on behalf of the grand jury.
"2. The possession shall be for a period of time, and on terms and conditions, as may reasonably be required for the action or proceeding. The reasonableness of such possession, time, terms, and conditions shall be determined with consideration for, among other things, (a) the good cause shown by the party issuing the subpoena or in *391 whose behalf the subpoena is issued, (b) the rights and legitimate needs of the person subpoenaed and (c) the feasibility and appropriateness of making copies of the evidence. The cost of reproduction and transportation incident thereto shall be borne by the person or party issuing the subpoena unless the court determines otherwise in the interest of justice.”

. Amended subdivision 8 of section 63 of the Executive Law, effective July 19, 1977, provides: "8. * * * The attorney-general, his deputy, or other officer, designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require that any books, records, documents or papers relevant or material to the inquiry be turned over to him for inspection, examination or audit, pursuant to the civil practice law and rules. If a person subpoenaed to attend upon such inquiry fails to obey the command of a subpoena without reasonable cause, or if a person in attendance upon such inquiry shall, without reasonable cause, refuse to be sworn or to be examined or to answer a question or to produce a book or paper, when ordered so to do by the officer conducting such inquiry, he shall be guilty of a misdemeanor.”

. Effective July 19, 1977, subdivision (c) was added to CPLR 2305. The new subdivision provides in pertinent part: "(c) Inspection, examination and audit of records. Whenever by statute any department or agency of government, or officer thereof, is authorized to issue a subpoena requiring the production of books, records, documents or papers, the issuing party shall have the right to the possession of such material for a period of time, and on terms and conditions, as may reasonably be required for the inspection, examination or audit of the material. The reasonableness of such possession, time, terms, and conditions shall be determined with consideration for, among other things, (i) the good cause shown by the issuing party, (ii) the rights and needs of the person subpoenaed, and (iii) the feasibility and appropriateness of making copies of the material.”

. The Practice Commentary regarding CPL 610.25 relates the legislative purpose of the challenged provisions.
"This amendment is part of an integrated package involving CPLR 2305, Penal Law § 215.70, Executive Law § 63, subdivision 8, and CPL § 190.25.
"It was sought by the Attorney General and the Special Prosecutor for Nursing Homes in order to offset and effectively overrule Matter of Heisler v. Hynes, 42 N.Y.2d 250, and Matter of Windsor Park Nursing Home v. Hynes, 42 N.Y.2d 243, decided by the Court of Appeals on July 7,1977, reargument denied, 42 N.Y.2d [1015], September 9,1977.
"In what has to be one of the speediest legislative overrulings of a judicial determination in recorded history, these amendments were approved as law and became effective on July 19,1977.
"The net purpose, assuming constitutionality of the new legislative package is to permit the subpoenaing agency to retain in its possession books, documents and records for examination and audit.
"The length of time and the terms and conditions for retention are set forth in the statute and a practical balance is sought to be struck between the good cause shown by the subpoenaer and the rights and needs of the subpoenaed including feasibility of reproduction with all costs to be borne by the subpoenaer unless the Court determines otherwise in the interest of justice.” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 610.25.)