OPINION OF THE COURT
George J. Balbach, J.
This is an application for an order of impoundment. The Special Prosecutor for Nursing Homes requests this court to assume control over subpoenaed records for the purpose of preserving these documents as evidence at trial.
The background for this unusual motion is as follows: Petitioner, pursuant to legislative mandate, undertook an investigation in 1975 of the Fairview Nursing Home and its *696 chief officer, Frank Klein. During the course of such investigation, the Special Prosecutor issued several office subpoenas (which were not challenged) and secured numerous books and records. In November, 1976 a Grand Jury subpoena was issued which directed respondent Klein to appear before a Queens Grand Jury bringing with him additional records of the Fair-view Nursing Home. These papers were ultimately left with the Special Prosecutor by stipulation. In March, 1977 the Queens Grand Jury voted an indictment against Klein. However, he was not arraigned at that time due to alleged ill health and up to the date of this hearing, has not personally appeared in court.
Shortly thereafter, respondent’s attorney demanded the return of all records surrendered, alleging that the powers of the subpoenas had terminated. Petitioner concedes that he no longer possesses authority under these subpoenas and now makes the instant motion, originally ex parte, to retain custody of all records produced in the course of its investigation, alleging that these documents are now valuable as evidence and would be utilized at time of trial.
Respondent vigorously opposes impoundment and demands the return of his property. He further maintains that recent Court of Appeals rulings have rendered their use, as evidence, illegal.
This application raises three fundamental questions pertaining to custody of records, to wit: (1) the nature of impoundment; (2) does abuse of subpoena negate custody? (3) the application of impoundment to this case. However, before examining these issues, it would be well to consider several recent Court of Appeals rulings which formed the background for the instant motion.
On July 7, 1977 in Windsor Park Nursing Home v Hynes (42 NY2d 243), the Court of Appeals upheld the Special Prosecutor’s right to issue a nonjudicial subpoena duces tecum. However, it ruled that an office subpoena does not entitle him "to retain custody of the documents for the purpose of audit and examination” (p 247). This restriction was based on the fact that the investigatory power of this agency was derived from subdivision 8 of section 63 of the Executive Law which authorized the Special Prosecutor "to subpoena witnesses, compel their attendance, examine them under oath before himself * * * and require the production of any books or papers which he deems relevant” (p 246). In essence, the
*697 court held that the Special Prosecutor possesses no statutory right to retain custody of documents under a nonjudicial subpoena.
A second pertinent decision in the same area was rendered on the same day when the Court of Appeals in Matter of Heisler v Hynes (42 NY2d 250), ruled that a Grand Jury subpoena duces tecum may not be used to compel a witness to surrender possession of records or other property to a prosecutor for independent examination outside the presence of the Grand Jury. The court based this reasoning on the fact that CPL 610.10 (subd 3) only authorized a "witness to bring with him and produce specified physical evidence.” However, this power "does not authorize the seizure, impoundment or other disruption in possession of records or property” (Matter of Heisler, supra, p 252). Once again this decision limited the power of the Special Prosecutor to assume custody over a person’s records, even under a Grand Jury subpoena. Both of these decisions reaffirmed a person’s fundamental right to his own property; both clearly limited the State’s power to examine these documents out of the presence of the defendant or for an extended period of time.
The restrictions laid down by the Court of Appeals were, to some degree, modified by legislative enactment. On July 19, 1977 chapter 451 of the Laws of 1977 was passed. This section, among other changes, modified CPLR 2305 by adding a new subdivision (c) which stated: "Whenever by statute any department or agency of government, or officer thereof, is authorized to issue a subpoena requiring the production of books, records, documents or papers, the issuing party shall have the right to the possession of such material for a period of time * * * as may reasonably be required for the inspection, examination or audit of the material.” This statute granted Special Prosecutors the right to examine records and retain them for the purpose of audit, thus supplying the statutory authority which was found lacking in Windsor Park.
A second change under the same chapter amended the subpoena power by passing a new CPL 610.25 which reads:
"1. Where a subpoena duces tecum is issued * * * the court or grand jury shall have the right to possession of the subpoenaed evidence. Such evidence may be retained by the court, grand jury or district attorney on behalf of the grand jury.
"2. The possession shall be for a period of time, and on *698 terms and conditions, as may be reasonably required for the action or proceeding.”
This amendment permitted the Grand Jury to retain subpoenaed records for a reasonable length of time.
A similar power of inspection was granted to the District Attorney in utilizing Grand Jury evidence. GPL 190.25 indicated that: "evidence obtained by a grand jury may be independently examined by the district attorney, members of his staff * * * and such other persons as the court may specifically authorize.” These latter amendments provide statutory sanction for some of the deficiencies noted in Matter of Heisler.
While these amended statutes restored the power of the prosecutor to retain custody of subpoenaed documents for the purpose of audit, the underlying theme of both cases remains clear — a subpoena is not a search warrant; the State may examine a person’s records but may not control them. A subpoena may now be challenged not only for what it seeks, but for how it is intended to be used. The recent cases, and the ensuing legislation, clearly impose additional duties on the prosecutor. He must presently consider not only the subject matter of his subpoena, but also its scope as regards duration and control. Examination for an unreasonable period of time or any abuse in the manner of control, would amount to a seizure of property and this has been emphatically condemned by the Court of Appeals.
This leads us to the present application. The Special Prosecutor’s powers to examine the records in this action spring from two sources; his right to issue an office subpoena and a Grand Jury subpoena. While no specific time limit was placed on the duration of the office subpoena, it would logically expire when its purpose was fulfilled. Once the records are turned over to the Grand Jury for its inspection and an indictment is thereafter voted, clearly the powers of the office subpoena terminate. The same reasoning applies to the Grand Jury subpoena, as there is no allegation that these books were needed as part of a continuing investigation (cf. People v Donaudy, 87 Misc 2d 787). Once the indictment was returned in March, the right to retain subpoenaed material is ended. Since the records in this case have been obtained under these spbpoenas, and the subpoenas have expired, the Special Prosecutor now seeks this order of impoundment so that he may keep control of the records and preserve them for the trial. *699 The petitioner further maintains that virtually all of the records he has acquired, except a series of invoices, have been presented to the Grand Jury in this case and now constitutes evidence before that body.
The application naturally is challenged by the respondent who demands his property, pointing out that since the Special Prosecutor has retained control of the records from March to the present date, he has abused the scope of the subpoenas and rendered the use of the records illegal.
I THE NATURE OF IMPOUNDMENT
The evolving concepts of custody having been examined, this court now turns to the first issue.
An order of impoundment is one which directs that property or records be taken into the custody of the court or the law (United States v Birrell, 242 F Supp 191). There is no statutory authority for such a remedy nor is it inherent in the powers connected with a subpoena duces tecum; rather it springs from the inherent power of the court (Matter of Heisler v Hynes, supra). This relief has been characterized as drastic and "[w]hen it is granted, it is in extreme circumstances and * * * hedged with restrictions and safeguards” (Hagan, Impounding and the Subpoena Duces Tecum, 26 Brooklyn L Rev 199, 230). New York cases dealing with this remedy are rare. In People v Carver (172 Misc 820), the Kings County District Attorney requested the court to "impound” books and records in the hands of a third party for the purpose of prosecuting the defendant. The People characterized this request as novel and urged the court not to be "concerned with the niceties of distinction but rather with the fundamental problem which entails law enforcement” (p 823). Unfortunately for the People, the court did concern itself with legal technicalities and denied the relief pointing out that (p 824): "[a] seizure of property to be used by the district attorney as evidence in a criminal prosecution is justifiable if effected from the person or the accused at the time of his arrest or if such seizure is incidental to a legal arrest” or as the result of a search warrant. A similar issue was decided to the same effect in Matter of Atlas Lathing v Bennett (176 Misc 959, 962), in which the court ruled, inter alia, "[i]f there be crime suspected which may be disclosed by seizure and examination of a man’s documents, the law of our State *700 amply provides orderly and proper methods pursuant to which a prosecuting official may proceed in the public interest”.
The above cases laid down the proposition that the courts will not allow impoundment to be used by the People either as a method of discovery or preserving evidence.
When is the remedy of impoundment permitted? The court in Matter of Heisler v Hynes (42 NY2d 250, 253, supra), laid down the following guidelines: "Impoundment is a measure so drastic that, when exercised, the taking and keeping that it brings about must be one by or solely on behalf of a court itself. By no means is it one which, as in this case, would put the prosecutor in sole possession of the petitioner’s records. It may be granted only on a demonstration of special circumstances, as, for instance, when evidence is likely to disappear or be altered unless guarded and preserved (United States v Birrell, 242 F Supp 191, 202, supra), the burden of showing which rests with the one who seeks it (Hagan, op. cit., p 215).”
The burden of establishing special circumstances is therefore upon the party seeking this relief. What are special circumstances? A leading case in this field, (United States v Birrell, supra), listed two areas: (1) when there exists a possibility that one of the parties might deliberately destroy or alter evidence; and (2) when a need is established to protect an individual’s rights.
An example of the second area was United States v Guterma (174 F Supp 581), where the court impounded records to ascertain which, if any, were private and which public. In addition to the above, the courts of this State have also recognized a third situation — namely, when there is a need to protect one’s legitimate property interests, such as trade secrets (cf. Kaumagraph Co. v Stampagraph Co., 197 App Div 66, affd 235 NY 1).
II ABUSE OF SUBPOENA
The second issue deals with the claim that petitioner exceeded the scope of his subpoena and, hence, the records turned over to him were illegally seized and they could not be impounded. To support this contention, respondent reasons as follows: all records submitted to the Special Prosecutor or Grand Jury, either by subpoena or threat of same, were intended only for limited day-by-day use. The Special Prosecutor, on his own initiative and without authority of law, as *701 sumed total control of these documents and thus exceeded his authority. This abuse of power, it is contended, nullified the subpoenas ab initio and made possession of the records unlawful in that they were now the product of an illegal search and seizure.
Analyzing this argument, it is generally understood that a subpoena is not a seizure in the Fourth Amendment sense; there are distinctions between "seizing” evidence and obtaining it by compliance with judicially supervised process (Matter of Horowitz, 482 F2d 72, 75). In Oklahoma Press Pub. Co. v Walling (327 US 186, 195), the Supreme Court disposed of a similar search and seizure issue by noting: "The short answer to the Fourth Amendment objections is that the records in these cases present no question of actual search and seizure, but raise only the question whether orders of court for the production of specified records have been validly made * * * No officer or other person has sought to enter petitioners’ premises against their will, to search them, or to seize or examine their books, records or papers without their assent, otherwise than pursuant to orders of court authorized by law and made after adequate opportunity to present objections”. Nor, is a subpoena to appear before a Grand Jury "a 'seizure’ in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome.” (United States v Dionisio, 410 US 1, 9.) The most apt summary regarding the relationship of the Fourth Amendment to subpoenas would appear to be that set forth in Oklahoma Press Pub. Co. (supra, p 208) which maintained that "the Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described’ ”. (Emphasis added.)
Therefore, in accordance with the above rules, this court finds that there was no search or seizure of respondent’s records in the Fourth Amendment sense. The records were not initially seized from the respondent but were secured either by consent or operation of law. Respondent had a right to challenge same pursuant to a motion to quash (CPLR 2304). Nor are there any contentions that the initial requests for records embodied by the subpoenas were so sweeping in their terms as to be regarded as unreasonable. At most, the Special Prosecutor exercised a control over the respondent’s papers which improperly interfered with the nursing home’s right of possession. In a case of such nature, it is this court’s view that *702 the doctrines set forth in Windsor Park and Matter of Heisler (both supra), dealing with such abuses, do not retroactively nullify a properly issued subpoena or challenge its initial legality. Rather, these cases give a petitioner additional grounds to move under the traditional remedy of quashing or modifying a subpoena by having the court fix conditions limiting the use of such remedy.
In any event, since the initial securing of the documents was legal and under process of law, this court finds that their subsequent retention was not so burdensome as to render this initial order illegal.
Ill
THE RELIEF IN THIS CASE
This brings us to the relief sought. Is impoundment a proper remedy in this case?
In resolving this question, it must first be noted that the subpoenaed documents in this action fall into two categories. The first class of document deals with those papers actually introduced before the Grand Jury and which became evidence for its consideration. The second category deals with those quantities of invoices which were obtained by virtue of the subpoena, held in reserve, but were never presented to the Grand Jury. It is this court’s view that the first quantity of documents would automatically become part of the Grand Jury minutes, the corpus, as it were, justifying the actual indictment. This view is supported by a reading of CPL 210.30 (subd 1) which grants the court authority to dismiss an indictment upon the ground "that the evidence before the Grand Jury was not legally sufficient to establish the commission by the defendant of the offense charged”. If the court has to consider underlying evidence, it would be difficult and in some cases impossible for it to perform that function without examining the exhibits upon which a jury reached its conclusion. To the same effect CPL 200.70 (subd 1) permits a court to amend an indictment when among other things "such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the Grand Jury which filed such an indictment”. Once again, implicit in this, is the view that the evidence presented to the Grand Jury must be in control of the court in order to be available for inspection.
*703 Thus this court feels that an order of impoundment is not necessary when evidence is presented directly to the Grand Jury. Such evidence would become part of the People’s case by operation of law, as would contraband or property seized by search warrant.
This leads to the second category of subpoenaed documents — those which the Special Prosecutor has, in reserve, available for Grand Jury use, but which were never actually introduced into evidence. In this case those documents appear to be a series of invoices. The Special Prosecutor argues that these records are as relevant as those actually presented to the Grand Jury and should be preserved by the court and for use at trial.
It is conceded that there is no New York case law in point, but "that it has been the practice in the state for 200 years that the District Attorney retains evidence produced before a Grand Jury pursuant to a subpoena duces tecum for use at the resulting trial.”
Further, petitioner contends that if an order of impoundment is required for this second category, this order should be granted simply on a showing that such materials are needed for trial.
However, "need” is not the test. As was clearly pointed out in the Heisler decision, the criteria is "special circumstances.” An evaluation of the evidence presented to this court simply indicates that the People require the evidence because it is in their possession and relevant to the case. They also feel that there exists the possibility that such evidence might disappear if it leaves their possession. This does not qualify as a special circumstance. There is no indication that respondent is likely to tamper or otherwise alter the requested documents. What the petitioner is actually seeking is to extend the status quo or utilize a back-door method of converting his original subpoena into a search warrant. This he cannot do since "the prosecutor may not use the Grand Jury subpoena duces tecum to impound the records * * * without specific court authorization”. (Matter of Heisler v Hynes, supra, p 255.)
As for the argument that it has been traditional for two centuries for the District Attorney to turn over such records to the trial court, it must be pointed out that a practice followed for a length of time without legal basis does not constitute precedence, but merely inertia or indifference to the rights of others.
*704 Petitioner’s application for an order of impoundment is denied. This court is cognizant of the Special Prosecutor’s need to preserve evidence and hereby permits him to photostat any documents prior to its being returned. The respondent is also directed to preserve such records in the event their use becomes necessary at the time of trial. No disposition of such records shall be made without order of this court. Due notice of application for such disposition shall be served on petitioner.