In the Matter of CHARLES J. HYNES, as Deputy Attorney-General, Respondent, v ISRAEL LEFKOWITZ, Doing Business as PALM BEACH HOME FOR ADULTS, Appellant. (Proceeding No. 1.)

In the Matter of CHARLES J. HYNES, as Deputy Attorney-General, Respondent, v OCEANAIRE BUILDING CORPORATION, Appellant. (Proceeding No. 2.)

In the Matter of CHARLES J. HYNES, as Deputy Attorney-General, Respondent, v HI-LI MANOR HOME FOR ADULTS, Appellant. (Proceeding No. 3.)

First Department, May 9, 1978

## APPEARANCES OF COUNSEL

*Robert A. Goldschlag* of counsel *(Jack S. Hoffinger* with him on the brief; *Hoffinger, Friedland & Roth,* attorneys), for appellants.

*T. James Bryan* of counsel *(Cary P. Grant* with him on the brief; *Charles J. Hynes, Deputy Attorney-General, pro se),* for respondent.

## OPINION OF THE COURT

FEIN, J.

Appellant operates a private proprietary home for adults. The petitioner, Deputy Attorney-General, issued an office subpoena duces tecum dated October 18, 1976 pursuant to subdivision 8 of section 63 of the Executive Law directing appellant (Palm Beach) to produce certain books and records for the period January 1, 1969 to June 30, 1976. In a proceeding to compel compliance with the subpoena, Palm Beach sought to quash the subpoena upon the grounds that the Deputy Attorney-General had no authority to issue the subpoena, that it was issued without sufficient justification and was overbroad. By order dated November 29, 1976, Justice MELIA granted the motion to compel compliance and dismissed the cross motion to quash.

This court affirmed (56 AD2d 755). The Court of Appeals unanimously affirmed the decision of this court (42 NY2d 408). However on the same day the court held that subdivision 8 of section 63 of the Executive Law as it then read did not authorize the Deputy Attorney-General to retain similar subpoenaed records for inspection, examination and audit. *(Matter of Windsor Park Nursing Home v Hynes,* 42 NY2d 243; see *Matter of Heisler v Hynes,* 42 NY2d 250, similarly limiting a Grand Jury subpoena duces tecum issued by the Deputy Attorney-General.) Almost immediately the Legislature amended subdivision 8 of section 63 of the Executive Law and CPLR 2305 to authorize the Deputy Attorney-General to retain subpoenaed records for inspection, examination and audit. On this basis, the Deputy Attorney-General issued a new subpoena duces tecum to Palm Beach dated July 21,

1977. (L 1977, ch 451.) The new subpoena differs from the prior one in two respects. It is updated to cover books and records for the period November 30, 1975 through June 30, 1977. In addition it directs that a substantially increased variety and quantity of books and records be produced.

In opposition to petitioner's motion to compel compliance Palm Beach asserted once again that (1) there was no factual basis for the subpoena; (2) it was overbroad; and (3) good cause had not been shown for requiring Palm Beach to turn over the subpoenaed documents. In addition appellant argued that the amendments to the Executive Law and the CPLR are unconstitutional in that they authorize illegal impoundment and court-ordered seizure of property without probable cause. It was also asserted the statutes are unconstitutionally vague.

Justice MELIA at Criminal Term granted the Deputy Attorney-General's motion to compel compliance with the subpoena in all respects, except that his order directed that items requiring the production of personal tax returns be excised. As held by Justice MELIA, to the extent that Palm Beach asserts that petitioner is without authority to require production of the subpoenaed records because there is no showing of a factual basis, good cause or relevance, *Matter of Friedman v Lefkowitz* (42 NY2d 408) sustaining the prior subpoena provides a sufficient answer.

The Court of Appeals upheld the prior subpoena on the basis that the Executive Law permits such an inquiry for the purpose of informing the Governor regarding the administration, management, control, operation, supervision, funding and quality of private proprietary adult homes. In response to the contention that enforcement of the subpoena would violate the constitutional prohibition against self incrimination, the court stated (42 NY2d 416): "The privilege against self incrimination * * *, concerned primarily with protection of individual civil liberties, is not to be interpreted to insulate economic or other interests of organizations, incorporated and unincorporated, when to do so would be to frustrate appropriate governmental regulation *(United States v White,* 222 US 694, 700)." Citing *Matter of Sigety v Hynes* (38 NY2d 260, 268) the court concluded that enforcement of the subpoena would not violate the privilege against self incrimination in the light of the provisions of the Executive Law directing the Board of Social Welfare to " 'visit and inspect, from time to time, and maintain a general supervision' of such homes (Executive

Law, § 750, subd 1 par a); the grant of power to representatives of the board of 'full access to the * * * books and papers relating to such institution' (Executive Law, § 750, subd 3); the authorization given to the board to 'direct an investigation * * * of the affairs and management' of such a home (Executive Law, § 752); and the required compliance in operation of such a home with the rules of the board (Executive Law, § 758, subd 3, par [e])" (see *Sreter v Hynes,* 419 F Supp 546).

■ Nothing in the amendments to the Executive Law and the CPLR vitiates the holding in *Friedman (supra)* sustaining the prior subpoena. The legislative history and the plain language of the amendments establish that their sole purpose was to authorize the Deputy Attorney-General to retain possession of the subpoenaed books and records for inspection, examination and audit. There was no intention to limit the *Friedman* holding. The stated objective of the amendments was to overcome the decisions in *Windsor Park* and *Heisler (supra)* which ruled only that the Deputy Attorney-General could not retain possession of the subpoenaed records because the statutes as they then read granted no such authority. Subdivision 8 of section 63 of the Executive Law was amended to read as follows: "The attorney-general, his deputy, or other officer designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require that any *books, records, documents* or papers relevant or material to the inquiry be turned *over to him for inspection, examination or audit, pursuant to the civil practice law and rules."* (Emphasis supplied.)

CPLR 2305 was amended by adding a new subdivision: "(c) Inspection, examination and audit of records. Whenever by statute any department or agency of government or officer thereof, is authorized to issue a subpoena requiring the production of books, records, documents or papers, the issuing party shall have the right to the possession of such material for a period of time, and on terms and conditions, as may reasonably be required for the inspection, examination or audit of the material. The reasonableness of such possession, time, terms, and conditions shall be determined with consideration for, among other things, (i) the good cause shown by the issuing party (ii) the rights and needs of the person subpoenaed, and (iii) the feasibility and appropriateness of making copies of the material."

A similar provision was added to the Criminal Procedure Law to cover Grand Jury subpoenas. (CPL 190.25.) Clearly the criteria for determining the "reasonableness" of possession are addressed to determining the period of time and conditions for the inspection, examination or audit of the material and not to whether there is a right to production and possession as now argued by appellants. The obvious intention was to permit the parties subpoenaed to ask a court to set limits upon such possession with respect to its time, terms or conditions.

The legislative memorandum in support of the bill states: "Recent decisions of the New York State Court of Appeals have held that there is no authority for the Attorney General or his or her special deputies to retain subpoenaed materials for examination and audit * * *. This bill provides the requisite statutory authorization." (Committee on Codes, Memorandum in Support, Senate 6925-A, Assembly 9018-a.)

The "good cause" referred to in the statute relates to the time, terms and conditions of possession. It is not intended to limit the right to production. Its objective is to define the newly conferred right to possession. *Friedman* held that the prior subpoena required the production of the books and records. In that respect appellant is concluded as to "good cause". It would be an anomaly to hold that a statute designed to authorize possession imposes greater limitations upon the right of the petitioner to obtain production of the subpoenaed materials. The "good cause" limitation is intended to give the subpoenaed party the right to apply to the court to fix the time, terms and conditions of possession. Its purpose is not to weaken the obligation to produce the records, but rather to set the parameters for the now authorized possession so as to balance the "good cause" shown of the issuer and the rights and needs of the party subpoenaed. (See Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 610.25.)

■ Nor is there any merit to appellant's argument that it is unconstitutional to authorize a governmental agency to obtain possession of subpoenaed evidence without establishing probable cause to believe that a crime has been committed. *Heisler* and *Windsor Park (supra)* did not so hold. They held only that possession was not authorized by the statutes as they then read. The holding in *Friedman* sustaining the prior subpoena on the ground that the information sought was for the pur-

pose of advising the Governor demonstrates that a subpoena duces tecum can be issued for the purpose of obtaining information to that end and that no requirement of probable cause exists. That rationale is not changed because possession is now authorized. The authority to issue a subpoena duces tecum to obtain factual information for purposes other than an inquiry into criminal conduct is well settled *(Friedman v Lefkowitz,* 42 NY2d 408, *supra; Matter of Joint Legis. Comm. [Teachers Union],* 285 NY 1, 8; *Matter of Di Brizzi [Proskauer],* 303 NY 206; *Dunham v Ottinger,* 243 NY 423; *Sinclair v United States,* 279 US 263).

■ There is a fundamental difference between obtaining evidence pursuant to a subpoena duces tecum and pursuant to a search and seizure. A subpoena duces tecum is not the equivalent of a search warrant for which a showing of probable cause is required. To sustain the subpoena it is sufficient to show that the inquiry is lawfully and properly authorized and the description of the materials sought is reasonably definite. The question is one of relevance not of probable cause. *(United States v Miller,* 425 US 435; *Oklahoma Press Pub. Co. v Walling,* 327 US 186; see *Matter of B. T. Prods. v Barr,* 44 NY2d 226.)

■ Equally without basis is the contention that the new statute is "unconstitutionally vague" in setting out the criteria to be considered by the court in determining what limitations are to be imposed upon the right of the subpoenaing agency to retain the subpoenaed materials. The statutory criteria for determining the reasonableness of the possession and its time, terms and conditions include (1) the good cause shown by the issuing party; (2) the rights and needs of the person subpoenaed; and (3) the feasibility and appropriateness of making copies. These standards are plainly sufficient to guide the court in fixing the limitations to be imposed upon the possession authorized by the statute.

There remains only to consider the contention that the subpoena under consideration is overbroad. Although no factual showing is made by appellant as to overbreadth it is not without significance that the new subpoena has "been enlarged to encompass more items", as found by Criminal Term. Even a cursory examination of the new subpoena demonstrates that it has substantially increased the nature and quantity of the documents sought over those required to be produced by the prior subpoena upheld in *Friedman (supra).*

Other than the above comment, Criminal Term did not discuss the significance of the difference between the two subpoenas. Neither in the Attorney-General's brief nor on the oral argument was any real showing made to justify the enlargement. Although relevancy and not breadth is the standard for judging the reasonableness of a subpoena *(Oklahoma Press Pub. Co. v Walling,* 327 US 186, 208, *supra),* it is appropriate to note that in *Friedman (supra,* pp 416-417), discussing overbreadth, the court held: "There surely are limits to the reach of office subpoenas, and inquisitorial officers are not to be understood as licensed to embark on roving fishing expeditions (cf *Dunham v Ottinger,* 243 NY 423, 433). It appears that such limits have been approached if not reached in these cases. We cannot, however, say they have been exceeded here".

Upon this basis we have concluded that the books and records required by the previous subpoena are sufficient. There is no showing of any need for the additional documents required by the new subpoena except that the prior subpoena is updated to include books, records and documents described therein maintained through June 30, 1977.

The judgment and order appealed from made no determination respecting the time, terms and conditions of the Attorney-General's possession of the subpoenaed items, as authorized by the statute, undoubtedly because appellant's challenge was addressed to the subpoena in its entirety and not to obtain an order imposing such limitations. Appellant, if so advised, should be afforded an opportunity to make an appropriate application for such relief only.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (MELIA, J.), entered September 15, 1977, which directed appellant to comply with an office subpoena duces tecum issued by petitioner, dated July 21, 1977, should be modified, on the law and the facts and in the exercise of discretion, to limit the books and records required to be produced to those described in the prior subpoena issued by petitioner on October 18, 1976, updated to include such books and records for the period from November 30, 1975 through June 30, 1977, and otherwise affirmed, without costs, without prejudice to any application by appellant to fix the time, terms and conditions of the Attorney-General's possession of the subpoenaed items.

SILVERMAN, J. P., EVANS, LYNCH and SANDLER, JJ., concur.

[Proceeding No. 1.] Resettled order and judgment (one paper), Supreme Court, New York County, entered on September 15, 1977, unanimously modified, on the law and the facts and in the exercise of discretion, to limit the books and records required to be produced to those described in the prior subpoena issued by petitioner on October 18, 1976, updated to include such books and records for the period from November 30, 1975 through June 30, 1977, and otherwise affirmed, without costs and without disbursements and without prejudice to any application by appellant to fix the time, terms and conditions of the Attorney-General's possession of the subpoenaed items.

[Proceeding No. 2.] Resettled order and judgment (one paper), Supreme Court, New York County, entered on September 15, 1977, unanimously modified, on the law and the facts and in the exercise of discretion, to limit the books and records required to be produced to those described in the prior subpoena issued by petitioner on October 29, 1976, updated to include such books and records for the period from January 1, 1972 through June 30, 1977 and otherwise affirmed, without costs and without disbursements and without prejudice to an application by appellant to fix the time, terms and conditions of the Attorney-General's possession of the subpoenaed items.

[Proceeding No. 3.] Resettled order and judgment (one paper), Supreme Court, New York County, entered on September 15, 1977, unanimously modified, on the law and the facts and in the exercise of discretion, to limit the books and records required to be produced to those described in the prior subpoena issued by petitioner on October 18, 1976, updated to include such books and records for the period from January 1, 1969 through June 30, 1977, and otherwise affirmed, without costs and without disbursements and without prejudice to an application by appellant to fix the time, terms and conditions of the Attorney-General's possession of the subpoenaed items.