*599 OPINION OF THE COURT
Peter M. Leavitt, J.
Defendants, both physicians, have been indicted on one count of grand larceny in the second degree and 40 counts of offering a false instrument for filing in the first degree all involving alleged acts constituting Medicaid fraud between October 1, 1990 and September 1, 1994. They were arraigned on the instant indictment, and entered pleas of not guilty to each count thereof, before this court on March 16, 1995.
Defendants now move, by a consolidated notice of motion, attorney’s affirmation, memorandum of law and reply affirmation, for a further bill of particulars[1] and the return of subpoenaed records. The response of the People — represented herein by the Office of the New York State Deputy Attorney-General for Medicaid Fraud Control — hereinafter, the Special Prosecutor — consists of an attorney’s affirmation. In their reply defendants request that the determination of their motion for a further bill be held in abeyance pending the parties’ efforts to resolve the issues initially raised without the court’s intervention — accordingly, said branch of defendants’ motion is held in abeyance pending the parties’ report to the court concerning such efforts.
By subpoenas duces tecum dated September 13, 1994, the Special Prosecutor directed defendants to produce before the Grand Jury: all of their patient files for Medicaid recipients whom they treated between June 1, 1990 and September 13, 1994; all of their diaries, appointment books, etc., for all of their scheduled appointments and patient visits between January 1, 1990 and September 13, 1994; all cancelled checks reflecting payment for care provided to Medicaid recipients between September 1, 1990 and September 13, 1994, and essentially all other memoranda concerning the care or treatment of Medicaid recipients between October 1, 1990 and September 13, 1994. During the periods for which materials were subpoenaed defendants were engaged in a joint medical practice so that the said materials were in one or more common locations. However, the patient files alone numbered between 3,074 — according to the Special Prosecutor — and 5,000 — according to defendants.
The subpoenas directed that all of the original materials be *600 delivered to the Grand Jury at 9:00 a.m. on September 27, 1994 — i.e., within 14 days of the date on which they were issued. It is undisputed that, pursuant to negotiations between counsel, the subpoenas were fully complied with on November 9, 1994. The indictment was returned on March 7, 1995.
The Special Prosecutor alleges that he had agreed to accept piecemeal delivery of the subpoenaed records between September 27th and November 9th as a courtesy, to accommodate the defendants’ stated need to photocopy the contents of each patient file prior to delivery of the originals in order to facilitate their continuing treatment of patients. Defendants allege, however, that, due to the time constraints imposed by the Special Prosecutor and the sheer volume of the subpoenaed records, they were actually able to photocopy the entire contents of only 500 files. Thus, according to defendants, they have copies of only the cover sheet for each of the remaining 2,500 to 4,500 patient files as they were comprised on the date of delivery to the Grand Jury.
The Special Prosecutor has refused defendants’ requests to return the original records or to provide, at his expense, defendants with photocopies thereof. He opposes defendants’ instant application for relief pursuant to CPL 610.25 on the grounds that, "defendants are unable to meet their burden of showing, at least initially, that copies of subpoenaed patient files are not already in their possession” (People’s response to request for particulars, hereinafter People’s Response, para 20, at 9). However, the Special Prosecutor fails to cite any authority whatsoever — either statutory or in the case law — for the proposition that defendants have any burden at all — once having applied for judicial intervention (Matter of Brunswick Hosp. Ctr. v Hynes, 52 NY2d 333, 336 [1981]) — much less the one which he avers herein. This failure is easily explained since, quite clearly, defendants have no such burden. Indeed, the content and tenor of his response indicates just as clearly that the Special Prosecutor has seriously misconstrued — if he has not blatantly chosen to ignore entirely[2] — the dictates of, *601 and the purposes to be served by, the provisions of CPL 610.25.
Whether it is accomplished in his own stead or on behalf of a Grand Jury, a prosecutor is authorized to issue a subpoena duces tecum only "through the process of the court”. (People v Natal, 75 NY2d 379, 385 [1990]; CPL 610.10 [2], [3]; 610.20 [2].) Neither a prosecutor nor a Grand Jury has the absolute power or right to retain subpoenaed materials ad infinitum, since the determination of the location, duration and terms of the custody thereof is, ultimately, within the province of the court, not the issuing prosecutor or Grand Jury. (Matter of Hynes v Moskowitz, 44 NY2d 383, 395-396 [1978]; see also, Matter of Kuriansky v Seewald, 148 AD2d 238, 241 [1st Dept 1989].)
CPL 610.25 initially relieves a prosecutor of the burden to justify the retention of subpoenaed materials and entitles him to continue in possession thereof without first obtaining a court order. (Matter of Brunswick Hosp. Ctr. v Hynes, supra.) Furthermore, during the retention period the prosecutor enjoys all of the elements of dominion and control synonymous with possession — e.g., the right to make copies of the subpoenaed materials, which copies remain the property of the prosecution even if the originals are returned. (Id.) But CPL 610.25 also gives the subpoenaed party "the right to apply to the court to fix the time, terms and conditions of possession” (Matter of Hynes v Lefkowitz, 62 AD2d 365, 372 [1st Dept 1978]) and, upon such application, "the court can delimit the period and extent of the prosecutor’s or Grand Jury’s custody” (Matter of Brunswick Hosp. Ctr. v Hynes, supra, at 338).[3] Thus —the apparent misconceptions of the Special Prosecutor, herein, notwithstanding — CPL 610.25 was not intended to convert a Grand Jury subpoena duces tecum into a warrant for the seizure of property (see, Matter of Brunswick Hosp. Ctr. v Hynes, 76 AD2d 436, 441 [2d Dept 1980], read on other grounds 52 NY2d 333 [1981], supra), nor to authorize the postindictment retention of subpoenaed materials merely in anticipation of, or in preparation for, trial (see, Matter of Hynes v Lerner, 44 NY2d 329 [1978]), without a court order.
Once the subpoenaed party has applied for judicial interven *602 tian, of course, the issuing party may, in response, seek expansion, rather than limitation, of the terms of custody. (See, Matter of Hynes v Moskowitz, supra, at 397; cf., People v Fairview Nursing Home, 92 Misc 2d 694 [Sup Ct, Queens County 1977].) However, the Special Prosecutor herein has offered no justification for his continued retention of defendants’ original patient files.[4] He has been in possession of all of the files for at least six months — i.e., since November 9, 1994 — which was more than sufficient time to have photocopied the entire contents for his own uses. (See, e.g., Aron Manor Nursing Home v Hynes, 63 AD2d 597 [1st Dept 1978].) If he chose not to exercise this right of possession such was certainly his prerogative, but it is quite irrelevant to the determination of the instant application if his choice was premised upon the costs of photocopying since CPL 610.25 (2) expressly provides: "The cost of reproduction and transportation incident thereto shall be borne by the person or party issuing the subpoena unless the court determines otherwise in the interest of justice.” (See also, Gelb v Kuriansky, 118 Misc 2d 960, 962-963 [Sup Ct, Kings County 1983].)
Indeed, the Special Prosecutor has little, if any, cause to complain about costs at this point. Defendants’ decision not to seek judicial intervention until after indictment has afforded him more than a "reasonable period of time” to determine which documents he wished to copy. (See, Matter of Kuriansky v Ali, 176 AD2d 728, 729 [2d Dept 1991].) Moreover, since he has now determined that he does not need 1,425 of defendants’ patient files (see, People’s Response, para 17, at 8) — i.e., approximately one half of all the files he allegedly possesses— the costs of reproduction have been substantially mitigated. In these circumstances there is no reason to shift the costs incident to reproduction of the subpoenaed records to defendants. (See, e.g., Matter of XYZ Nursing Home v Kuriansky, 159 AD2d 576 [2d Dept 1990].)
Finally, the Special Prosecutor’s allegations that defendants had "more than ample opportunity to”, and "did in fact” (People’s Response, para 13, at 7), photocopy all of the subpoe *603 naed materials before delivering the originals — the only argument which he advances in opposition to the instant motion— are entirely inconsequent. Assuming arguendo that defendants did make copies of every page of the subpoenaed records, and that they have been in possession of such copies since before the originals were delivered to the Grand Jury, they are nonetheless entitled to have the originals returned to them upon the instant application. (See, e.g., Matter of Grand Jury Subpoenas Duces Tecum Mar. 8, 1985, 114 AD2d 367 [2d Dept 1985]; Aron Manor Nursing Home v Hynes, supra; Gelb v Kuriansky, supra.) The court is unaware of any reported decision — and the Special Prosecutor cites none — in which, upon an application to fix the terms of possession of subpoenaed records pursuant to GPL 610.25 (2), the subpoenaed party has been granted the return of copies only while the issuing party was permitted, absent a showing of probable cause or other justification for the seizure, to retain the originals.[5] (Cf., Matter of XYZ Nursing Home v Kuriansky, supra [subpoenaed party sought copies only, not return of originals].)
Accordingly, defendants’ motion is granted to the extent that the Special Prosecutor is hereby directed to return to defendants the original subpoenaed records by delivering same on two hours’ notice to defendants’ place of business, 970 North Broadway, Suite 308A, Yonkers, New York, no later than 5:00 p.m., May 30, 1995. The Special Prosecutor is granted leave to move to renew — said motion to be made on no less than seven days’ notice to defendants, returnable prior to the expiration of the aforesaid period for delivery of the original subpoenaed records — upon a showing of justification for the continued retention of the subpoenaed records, in either his or the court’s custody, and good cause for his failure to submit such proof in response to defendants’ original motion; in which event the Special Prosecutor shall deliver to defendants, in lieu of the originals, photocopies of the subpoenaed records simultaneously with service upon defendants of notice of the motion to renew.
*604 Further, the Special Prosecutor is hereby directed to return to defendants the original 1,425 patient files referred to, but unidentified, in paragraph 17, at page 8, of the People’s Response, forthwith but in no event later than 5:00 p.m., May 17, 1995; the Special Prosecutor is not granted leave to move to renew as to this branch of the court’s decision and order. The Special Prosecutor shall bear all costs incident to the reproduction and delivery of all of the subpoenaed records or copies thereof. The subpoenaed records — whether originals or copies — shall be returned to defendants in the same condition, and in the same arrangement, as they were delivered to the Grand Jury.
Defendants are hereby directed that the original subpoenaed records — excluding the 1,425 patient files which, by the terms of this decision and order as aforesaid, are to be returned to them no later than 5:00 p.m., May 17, 1995 — shall be maintained in their sole and exclusive custody — in the same condition, and in the same arrangement, as they are delivered to them by the Special Prosecutor — continuously until the instant indictment is disposed of by final judgments of conviction, acquittal or dismissal, or until otherwise directed by this court; in the interim, defendants shall not, nor permit others to, discard, destroy, deface, write upon or otherwise alter in any fashion any of the said subpoenaed records without prior approval of this court. In the event that the Special Prosecutor seeks the production of any of the said subpoenaed records for use as evidence at a trial of this indictment defendants shall, upon the Special Prosecutor’s request, provide affidavits concerning their custody thereof, and compliance with the provisions of this decision and order, during the period commencing with their actual receipt of the subpoenaed records; which affidavits shall be admissible on the People’s direct case to show that the subpoenaed records offered in evidence are then in the same condition as they were on the date of defendants’ receipt thereof.
Any willful failure of strict compliance with the mandates of this decision and order shall be deemed a criminal contempt of court. (Judiciary Law § 750 [3], [4].)

. Defendants were granted leave to interpose the instant preliminary motion without prejudice to their subsequent interposition of an omnibus motion for other relief in timely fashion.

. It is noteworthy that, although the statute provides: "Where physical evidence specified to be produced will be sought to be retained in custody, notice of such fact shall be given the subpoenaed party” (CPL 610.25 [2]), there is no indication that any such notice was given to defendants herein. It would seem to this court that this notice provision was intended to alert the subpoenaed party of the need to seek judicial intervention and, thereby, expedite the imposition of "reasonable terms and conditions” (id.) of possession. Consequently, the omission of such notice evinces an effort to circum *601 vent the statutory mandates. However, defendants have not raised this point on the instant application and, at present, there is no motion before the court to preclude the use at trial of the subpoenaed records. (See, e.g., People v Warmus, 148 Misc 2d 374, 379-384 [Westchester County Ct 1990].)

. See, n 2, supra.

. For example, if the Special Prosecutor was concerned about maintaining the integrity of the subpoenaed records for their later admission as evidence at trial — an argument which he has not advanced herein. In which event he could, upon the instant application, have photocopied the originals and sought a stipulation from defendants concerning the accuracy and admissibility of the copies (see, Matter of Heisler v Hynes, 42 NY2d 250, 254-255 [1977]) or offered to deliver the originals to the court as the proper custodian (see, People v Natal, supra). He has done neither.

. The issue has usually arisen in the context of a motion to quash the subpoena or to compel compliance therewith — i.e., prior to the actual delivery of the subpoenaed records. While the timing of the instant application — occasioned at least in part by the Special Prosecutor’s failure to give notice of retention (see, n 2, supra) — presents a different factual scenario, application of the underlying legal principles mandates the same determination herein.